THOMPSON MEDICAL COMPANY, INC., Petitioner,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 85–1047.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 6, 1986.

Decided May 27, 1986.

statutory prohibition on disclosure and the

§ 6103(*l*)(4)(A) authorization procedure.

Patricia Hatry, New York City, with whom Jeffrey C. Katz, New York City, was on the brief, for petitioner.

Melvin H. Orlans, Atty., F.T.C., with whom Ernest J. Isenstadt, Asst. Gen. Counsel, F.T.C., Washington, D.C., was on the brief, for respondent.

Before ROBINSON, Chief Judge, and MIKVA and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case concerns a complaint brought by the Federal Trade Commission ("FTC" or "Commission") against petitioner Thompson Medical Company under §§ 5 and 12 of the FTC Act. 15 U.S.C. §§ 45 & 52. The complaint alleged and the Commission found that Thompson's advertising for Aspercreme, a topical analgesic, was false and misleading, and constituted an unfair and deceptive practice. The Commission ordered Thompson to refrain from making unsubstantiated claims that Aspercreme is effective and to disclose in the product's labeling and advertising that it does not contain aspirin. Thompson challenges the FTC's order as arbitrary and capricious, contrary to public policy, unsupported by substantial evidence, and discordant with applicable Commission precedent. We find that the Commission's order and decision are supported by the law and the facts, and therefore affirm the FTC.

## BACKGROUND

Petitioner sells an over-the-counter ("OTC") analgesic (pain reliever) known as Aspercreme. Aspercreme is supposed to help arthritis victims and others who seek relief from minor aches and pains. As the name suggests, Aspercreme is a cream meant to be rubbed on the area where an analgesic effect is desired. Despite its name, however, Aspercreme contains no aspirin (acetyl salicylic acid). Rather, Aspercreme's active ingredient is trolamine salicylate (sometimes referred to as TEA/S or TEAS), a chemical relation of aspirin.

Even though Aspercreme contains no aspirin, Thompson's advertising strongly suggested that Aspercreme and aspirin were somehow related. One television advertisement used by Thompson, for example, contained the following monologue:

> When you suffer from arthritis, imagine putting the strong relief of aspirin right where you hurt. Aspercreme is an odorless rub which concentrates the relief of aspirin. When you take regular aspirin, it goes throughout your body like this. But, in seconds, Aspercreme starts concentrating all the temporary relief of two aspirin directly at the point of minor arthritis pain.... [Voice over:] Aspercreme. The strong relief of aspirin right where you hurt.

Complaint counsel's exhibit B, *In re Thompson Medical Co., Inc.*, 104 F.T.C. 648, 653 (1984). In this and similar ads, the announcer is shown holding aspirin tablets at the beginning of her monologue; as she speaks the aspirin is replaced by a tube of Aspercreme.

In February of 1981, the FTC issued an administrative complaint against Thompson. Thompson was charged with having violated sections 5 and 12 of the FTC Act. 15 U.S.C. §§ 45 and 52. These actions prohibit "unfair or deceptive acts or practices in commerce" and "disseminat[ing] ... any false advertisement ... for the purpose of inducing ... the purchase ... of ... drugs." Specifically, Thompson was charged with having made unsupported claims that Aspercreme was effective for the relief of arthritic pain, having falsely represented that this efficacy had been scientifically established, and having falsely represented that Aspercreme contained aspirin. *See* Initial Decision by Hyun, Administrative Law Judge, *In re Thompson Medical Co., Inc.*, 104 F.T.C. 648, 660, 660–61 (June 24, 1983) (*"Thompson* Initial Decision"). The FTC complaint was heard before an administrative law judge (ALJ). After compiling a record in excess of 6500 pages, he issued a 127-page opinion finding Thompson liable. *See Thompson* Initial Decision. The matter was appealed to the Federal Trade Commission. The FTC engaged in extensive review of the ALJ's decision and entered a 56-page opinion of its own, affirming the ALJ's decision and entering a final order against Thompson. *See In re Thompson Medical Co., Inc.*, 104 F.T.C. 648, 786 (Opinion) 842 (Order) (1984) (*"Thompson* Opinion" and "Order").

The FTC affirmed the ALJ's finding "that Thompson lacked reliable and credible information constituting a reasonable basis for the efficacy claims it made for Aspercreme." *Thompson* Opinion at 787–88, 821–28. The Commission found that Thompson had represented that Aspercreme was more effective than aspirin, and that Thompson had represented that Aspercreme's effectiveness had been scientifically substantiated. The Commission also found that Thompson had falsely represented that Aspercreme contained aspirin. It found that the alleged misrepresentations were material, and that they were likely to mislead consumers. The Commission also determined that Thompson's false and deceptive advertising had been deliberate. *Id.* at 791–839.

The FTC issued a final order against Thompson that prohibited the company from using the name Aspercreme unless its advertising and packaging made clear that Aspercreme does not contain aspirin. *See* Order, 104 F.T.C. 842, part I.A. The Commission also prohibited Thompson from representing that Aspercreme "involves a new scientific principle" when it has "been available for purchase in the United States

as an [OTC] drug for more than one year," *id.*, part I.B., and from misrepresenting either the ingredients of Aspercreme or the results of any tests or studies of Aspercreme. *Id.*, parts I.C. & D. In the part of its order that has engendered the most controversy, the FTC ordered Thompson to refrain from

A. Representing that [Aspercreme] is effective for the relief of minor pain and other symptoms of any musculoskeletal disorder....

B. Representing that [Aspercreme] is as fast or faster than, or is as effective as, or more effective than any other drug or device in the relief of minor pain and other symptoms of any musculoskeletal disorder ...; unless at the time of ... such representation, [Thompson] possesses and relies upon a reasonable basis for such representation consisting of competent and reliable scientific or medical evidence.

Order, part II.

The FTC's Order went on to provide that "competent and reliable scientific evidence shall include at least two adequate and well-controlled, double-blinded clinical studies...." *Id.*

## DISCUSSION

Thompson mounts a tripartite attack on the Commission's decision and order. Thompson first argues that the Commission was not acting in the public interest when it undertook to review Thompson's advertising. Thompson supports this contention by asserting that the Food and Drug Administration's ongoing review of OTC drugs preempts the FTC's jurisdiction here. Thompson next argues that the "reasonable basis" standard imposed by the Commission was improper. Thompson insists that requiring two clinical studies before Aspercreme can be advertised as effective is onerous and unwarranted. Finally, Thompson attacks the Commission's decision to require the company to make clear to consumers that Aspercreme does not contain aspirin. We take up these challenges in turn.

### A. *The Public Interest*

Thompson argues that the FTC proceeding here was not in the public interest and was therefore improper under the FTC Act. *See* 15 U.S.C. § 45(b) (FTC may bring complaint "if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public"). (Thompson does not make the statutory basis of its argument clear, but we presume that Thompson's argument turns on the FTC Act rather than generalized principles of fairness or equity.) Thompson claims that the FTC proceeding was not in the public interest because the Food and Drug Administration (FDA) is entrusted by law with authority to evaluate and regulate all over-the-counter medicine, and is currently engaged in a review of such drugs. *See* Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.;* 21 C.F.R. part 330. Thompson asserts that the FDA should be allowed exclusive regulatory authority over the marketing and labelling of OTC drugs while its review is pending. The argument is without merit. The FDA proceedings referred to by Thompson began in 1962. It strains credulity to argue that even the most blatantly false or deceptive advertising of OTC drugs must be allowed so long as the FDA is evaluating the efficacy of those drugs.

We find no evidence in the regulatory scheme that Congress has fashioned for over-the-counter medications that the FTC is indefinitely barred from all regulatory authority over drug advertising while the FDA conducts its comprehensive review of drug safety. Nowhere in the case law or in the FTC's grant of authority is there even a hint that the FTC's jurisdiction is so constricted. To the contrary, the cases recognize that ours is an age of overlapping and concurring regulatory jurisdiction. *See Federal Trade Commission v. Texaco, Inc.*, 555 F.2d 862, 881 (D.C.Cir.), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977) ("this is an era of overlapping agency jurisdiction under different statutory mandates"). In an analogous context the Supreme Court held that the

FTC's jurisdiction is concurrent with that of the Attorney General to file an antitrust suit. *See Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 694–95, 68 S.Ct. 793, 800–01, 92 L.Ed. 1010 (1948). Other agencies and their mandates similarly overlap; not even a faint clue exists that Congress desired otherwise.

■ The FTC has substantial expertise in evaluating claims of drugs' absolute and comparative efficacy, and in assessing whether advertisements are misleading or deceptive. *See, e.g., Warner-Lambert Co. v. Federal Trade Commission*, 562 F.2d 749, 753–56 (D.C.Cir.1977), *cert. denied*, 435 U.S. 950, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978); *American Home Products Corp. v. Federal Trade Commission*, 695 F.2d 681, 691–93 (3d Cir.1982). We see no reason why the FTC should not be allowed to exercise that expertise in the circumstances presented here.

■ Thompson asserts that the Second Circuit has acknowledged that the FDA is entrusted with sole responsibility to evaluate drugs' absolute safety and efficacy. Thompson cites *Bristol-Myers Co. v. Federal Trade Commission*, 738 F.2d 554, 559–60 (2d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 960, 83 L.Ed.2d 966 (1985), as support for this proposition. Thompson's reliance on *Bristol-Myers* is entirely misplaced. The *Bristol-Myers* court made it quite clear that "FDA requirements and regulations ... simply d[id] not govern th[at] case. Not only is a different regulatory scheme involved, but generally speaking, the FDA is concerned only with evaluating absolute safety and efficacy, and not with questions of comparative safety and efficacy that arise in OTC drug advertising." *See id.* at 559. Thompson's belief that *Bristol-Myers* supports its position is wrong.

■ This passage from *Bristol-Myers* makes clear that Thompson is wrong for another reason: the FDA will never have occasion to consider the full range of issues dealt with by the FTC in its proceeding against Thompson. Here, as noted above, the FTC found that Thompson had made misleading comparative efficacy claims. For instance, Thompson had claimed, without scientific or clinical proof, that Aspercreme was more effective than aspirin. The FDA has no warrant to address this claim. Rather, the FDA's evaluation of OTC drugs only involves a determination of the safety and efficacy of individual drugs. *See* 21 C.F.R. part 330. Hence, no conceivable doctrine of deference or expertise would justify awaiting the result of the FDA's over-the-counter drug evaluation program.

■ If and when the FDA concludes that trolamine salicylate is effective, Thompson will be allowed, by the express terms of the FTC's decision, to advertise Aspercreme as an effective analgesic. *See Thompson* Opinion at 826 n. 73. Although such FTC deference to the FDA is by no means required, the fact that the FTC has provided for it in this case means that Thompson is really objecting to *any* regulation of its advertising pending a determination of Aspercreme's efficacy. We decline to hold that firms may not be prevented from advertising their products as efficacious until they are proved otherwise. Such a conclusion would turn the statutory scheme on its head.

### B. *Reasonable Basis*

■ Thompson contends that the FTC erred in requiring two clinical studies as a prerequisite for any future representation that Aspercreme is an effective analgesic. Thompson correctly acknowledges that in general an advertisement is considered deceptive if the advertiser lacks a "reasonable basis" to support the claims made in it. *See In re Pfizer*, 81 F.T.C. 23 (1972); *Porter & Dietsch, Inc. v. Federal Trade Commission*, 605 F.2d 294, 302 (7th Cir. 1979). The controversy here concerns what constitutes such a basis. Thompson is unhappy with the Commission's requirement of two clinical studies. Thompson asserts that neither case law nor scientific wisdom justifies the imposition of this re-

quirement, and that it has never before been imposed.

■ The Commission's opinion contains a thorough discussion of the framework traditionally used by the FTC in deciding when ads are properly supported by a reasonable basis, *Thompson* Opinion at 821–29, and why the order issued here contained the term it did. *Id.* at 829–39. We think the Commission has properly employed the framework established by its precedents in concluding that there was no reasonable basis shown here and in requiring two clinical studies before any representations can be made about Aspercreme's efficacy.

In evaluating the reasonable basis arguments, it is important to distinguish between two types of advertising claims. Some advertisements contain express representations about the level of support for a particular claim. Such advertisements are said to contain establishment claims. *See Thompson* Opinion at 813. The FTC has traditionally required that if an advertisement contains an establishment claim (*e.g.*, if it states that a product has been found to be superior by scientific tests) "the advertiser must possess the level of proof claimed in the ad." *Bristol-Myers Co. v. Federal Trade Commission*, 102 F.T.C. 21, 321, *aff'd*, 738 F.2d 554 (2d Cir. 1984), *cert. denied*, — U.S. —, 105 S.Ct. 960, 83 L.Ed.2d 966 (1985). If the claim is more general, but nevertheless constitutes an establishment claim, the FTC will specify the nature and extent of substantiation that will support the claim. *See, e.g., Sterling Drug, Inc. v. Federal Trade Commission*, 741 F.2d 1146, 1152–53 (9th Cir.1984); *American Home Products, supra,* 695 F.2d at 691–93; *Bristol-Myers, supra,* 102 F.T.C. at 351–52, 738 F.2d at 558–59. The FTC has usually required two well-controlled clinical tests before such a non-specific establishment claim may be made. (It should be noted that whether a claim of establishment is in fact made is a question of fact the evaluation of which is within the FTC's peculiar expertise. *See Chrysler*

*Corp. v. Federal Trade Commission,* 561 F.2d 357, 363 (D.C.Cir.1977).)

In the case of a simple claim of efficacy—a "non-establishment" claim—the reasonable basis required has been defined more flexibly. In *In re Pfizer Inc.,* 81 F.T.C. 23 (1972), the Commission established guidelines for the level of substantiation needed to support non-establishment claims. "*Pfizer* holds that the Commission itself may identify the appropriate level of substantiation for ads that do not expressly or impliedly claim a particular level of substantiation." *Thompson* Opinion at 822 n. 59. In particular cases, however, the Commission has not always explained what would constitute "the appropriate level of substantiation" with great specificity. *See, e.g., American Home Products Corp., supra,* 695 F.2d at 710; *Bristol-Myers Co., supra,* 738 F.2d at 560–61. In *American Home Products,* for instance, the FTC merely provided that "competent and reliable scientific evidence" would be needed before any "non-comparative representations concerning the effectiveness ... of [the advertised] OTC drug products" could be made. 695 F.2d at 710.

The vagueness that characterized the Commission's order in *American Home Products* is not present in this case. Here, the FTC's requirement of clinical testing before an efficacy claim can be made extends to both establishment and non-establishment claims. *See Thompson* Opinion at 813–14 (discussing Thompson's representations that it had a particular level of support for its efficacy claims), 821–22 & n. 58 (discussing reasonable basis requirements for establishment and non-establishment claims). Indeed, the FTC downplays the significance of the distinction between establishment and non-establishment claims. The FTC states that

> There is no conceptual or practical reason to single out such [establishment] claims for special treatment. They are but one example of an express or implied claim that an advertiser possesses a particular level of substantiation.... [T]he Commission itself may identify the ap-

propriate level of substantiation for ads that do not expressly or impliedly claim a particular level of substantiation.... We do not have to perform such an evaluation where an advertisement itself makes ... substantiation claims.

*Id.* at 822 n. 59.

Despite the continuum that various sorts of claims lie along, it does not appear that the FTC has ever before required clinical testing to support a non-establishment claim. This forms the crux of Thompson's challenge to the FTC's Order. We think Thompson's attack is inadequate to overturn the FTC's decision. Despite the FTC's departure from its usual result, its reasoning in arriving at the requirement of clinical testing *is* well-founded in precedent. That is, the Commission carefully reviewed the factors laid out in its precedents before concluding that a two-clinical-test standard was appropriate here. *See Thompson* Opinion at 821–29; FTC Policy Statement Regarding Advertising Substantiation, Appendix to *Thompson* Opinion, 104 F.T.C. 839. The controversy thus turns on whether the FTC has properly applied the law to the facts.

Thompson rests its argument in large part on *In re Pfizer, supra.* Thompson argues that the reasonable basis standard for non-establishment claims articulated there and in subsequent FTC cases would have been satisfied here without the imposition of a clinical testing requirement. In essence, Thompson argues that the FTC has unreasonably and without explanation imposed a more severe standard here than it ever has in the past. Thompson's argument is unconvincing because in this case the Commission did not categorically impose a requirement of clinical testing for non-establishment claims. Rather, the Commission employed the multi-factorial analysis first expounded in *Pfizer* that Thompson acknowledges is appropriate, exercised its remedial discretion, and determined that the particular facts here warranted the imposition of a clinical testing requirement. The Commission's catalog and analysis of the factors deemed relevant in fashioning a remedy was extensive and painstaking. *See Thompson* Opinion at 821–29.

The cases cited by Thompson for the proposition that non-establishment claims need not be substantiated by clinical testing do not support that conclusion. Rather, as noted above, they simply constitute instances in which the Commission has not imposed such a requirement or has rejected its categoric imposition. *See, e.g., Bristol-Myers Co. v. FTC, supra; Sterling Drug, Inc. v. FTC, supra; American Home Products Corp. v. FTC, supra.* In *Bristol-Myers,* for instance, the Commission merely rejected the proposition that *all* efficacy claims should be supported by clinical testing. *See* 738 F.2d at 560–61.

Thompson is really arguing that non-establishment claims can never support a clinical testing requirement. Because the FTC did not impose a scientific testing requirement in some previous OTC drug cases, Thompson asserts that clinical testing should never be required in an OTC case. Thompson does not offer convincing support for this rather extreme position. Merely citing cases that are arguably similar to this one and observing that a less stringent standard was applied in them does not amount to proof that the FTC acted contrary to law in imposing a higher standard in this case.

It is worth noting that the Commission would be placed in a difficult position should we decide that a clinical testing requirement was inappropriate here. The Commission has had some difficulty with orders governing non-establishment claims that have been attacked on vagueness grounds. In *American Home Products Corp., supra,* 695 F.2d at 710, the court struck down on vagueness grounds part of an FTC order requiring "competent and reliable scientific evidence" as a reasonable basis for non-establishment claims. The court rested its holding in part on the large range of products covered by the order. In *Bristol-Myers Co., supra,* 738 F.2d at 560–61, by contrast, the court upheld an FTC order against a vagueness challenge. In

*Bristol-Myers* the order's language was substantially similar to that in *American Home Products,* but it did not extend to as wide a range of products. The court distinguished *American Home Products* by noting that *AHP* depended not only on the allegedly vague language in the order, but also on the order's breadth. Despite the court's ultimate approval of the FTC's order in *Bristol-Myers,* however, the FTC had to go through a lengthy and uncertain appellate process before enforcing the order. *See also Sterling Drug, Inc. v. FTC,* 741 F.2d at 1156–57.

■ Obviously, both courts and the FTC would prefer that the FTC's orders were unequivocally legal. If we were to conclude that the two-clinical-test standard was unjustified under the *Pfizer* reasonable basis framework, it would be difficult for the FTC to fashion an acceptable set of requirements for non-establishment claims. The Commission has special expertise in determining what sort of substantiation is necessary to assure that advertising is not deceptive. We decline to interfere with its exercise of that discretion in the circumstances of this case.

■ We pause briefly to respond to Thompson's repeated expressions of horror at the alleged effect of the FTC's order. Thompson asserts that the Commission's decision will destroy its business, and is tantamount to an order to cease selling Aspercreme. Two responses to Thompson's bleatings are appropriate. First, they are simply not true. The FTC's Order did not bar the sale of Aspercreme forever and under all circumstances. Indeed, the sale of Aspercreme was not barred at all. Only misleading advertising was prohibited. If Thompson does come up with new clinical studies or if the FDA reclassifies trolamine salicylate Thompson would be free to continue to make efficacy claims in its Aspercreme ads. In the interim, Thompson is free to advertise Aspercreme so long as it does not make false or misleading representations. Second, although the effect of the order on Thompson's business may well be severe, we see no reason that Thompson

should be able to make advertising claims if they are not true. The FTC has a mandate to assure that advertising is not false and misleading. Allowing firms to continue such advertising because to stop would hurt the firm's economic interests is obviously not part of the calculus of interests Congress intended the FTC to consider. Thompson has no right to stay in business if the only way it can do so is to engage in false and misleading advertising.

■ We also reject Thompson's argument that the Commission should have found that the available evidence supports the company's efficacy claims for Aspercreme. Thompson devotes much time and energy to a discussion of the scientific and technical material that was put into evidence in this matter. Thompson argues that the Commission failed to take into account new studies that became available during the proceedings, and that if the FDA had had all the data presented to the FTC it would already have classified Trolamine salicylate as effective. We deplore Thompson's attempt to retry this matter before us. Appellate courts have neither the expertise nor the resources to evaluate complex scientific claims. Thompson does not argue that the FTC's decision was unsupported by substantial evidence on the record. *See Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Rather, Thompson simply urges us to believe its experts rather than those witnesses apparently given greater credence by the Commission. Our role, however, is not to reweigh the evidence de novo to determine how we would have resolved the matter. *See Federal Trade Commission v. Algoma Lumber Co.,* 291 U.S. 67, 73, 54 S.Ct. 315, 318, 78 L.Ed. 655 (1934); *Warner-Lambert Co. v. Federal Trade Commission, supra,* 562 F.2d at 753. Our task is only to determine if the Commission's finding is supported by substantial evidence on the record as a whole.

### C. *Aspirin Content*

■ Thompson also challenges the portion of the FTC order requiring it to dis-

close in all advertising and labelling that Aspercreme does not contain aspirin. This part of Thompson's argument borders on the frivolous. Thompson argues that no misrepresentation occurred, that it is not material to consumers whether Aspercreme contains aspirin or not, that Aspercreme is merely a trademark and does not convey any information about the product's content, and that in any event Aspercreme labelling has always indicated that Aspercreme does not contain aspirin. (One wonders why Thompson is upset about being ordered to disclose that its product does not contain aspirin if no one cares and everyone has always known anyway.)

The issue of what message was reasonably likely to be conveyed to consumers by Aspercreme's advertising was extensively addressed by expert testimony. *See Thompson* Opinion at 788–816. The FTC's summation of the law in this area is accurate and succinct.

Advertising representations will be condemned if they are likely to deceive; actual deception need not be shown. The tendency of a particular advertisement to deceive is determined by the net impression it is likely to make upon the viewing public. Consequently, literally true statements may nonetheless be found deceptive, and advertisements reasonably capable of being interpreted in a misleading way are unlawful even though other, non-misleading interpretations may also be possible.

In determining the meaning likely to be conveyed by advertisements, the Commission is engaged in fact-finding, and its findings are to be regarded as conclusive if supported by substantial evidence. Moreover, in interpreting advertisements, the Commission may rely on its own reasoned analysis of the advertisements themselves, without resorting to surveys or consumer testimony. Although the meaning of the statutory phrase "deceptive acts or practices" is ultimately a matter for judicial construction, the Commission's conclusion that acts or practices are likely to deceive is due special deference owing to the na-ture of the inquiry and the Commission's expertise in evaluating deception.

Brief for the FTC at 49–50 (footnotes omitted). The factual nature of the FTC's findings with respect to the aspirin claims and the FTC's expertise and experience in this area make its opinion very difficult to challenge.

CONCLUSION

The FTC adequately considered a large mass of technical evidence and concluded that Thompson had engaged in deceptive advertising with respect to Aspercreme. We cannot find fault in the Commission's conclusions or in the remedial measures it imposed. Indeed, in all respects, we find the FTC Order and Opinion clear and logical. If and when Thompson comes up with evidence that Aspercreme is effective, it will be free to again make efficacy claims in its advertising. Until that time, it should not say what it cannot prove. The FTC's requirement of aspirin-content disclaimers also is entirely appropriate; Aspercreme does not contain any aspirin, and its makers should not imply that it does. Accordingly, Thompson's petition for review of the FTC's order is

*Denied.*