UNITED STATES of America, Plaintiff,

v.

The BUILDING INSPECTOR OF AMERICA, INC., a corporation, Ralph L. Tisei, individually, and as an officer of The Building Inspector of America, Inc., Beverly A. Tisei, individually and as an officer of The Building Inspector of America, Inc., and Lawrence Finklestone, individually and as an officer of The Building Inspector of America, Inc., Defendants.

Civ. A. No. 93–10838–NG.

United States District Court,
D. Massachusetts.

May 26, 1995.

Anita Johnson, U.S. Attorney's Office, Boston, MA, Elizabeth Stein, Dept. of Justice, Office of Consumer Litigation, Washington, DC, for plaintiff.

J. Daniel Silverman, Wakefield, MA, for The Building Inspector of America and Beverly A. Tisei.

Ralph L. Tisei, The Building Inspector of America, Inc., Wakefield, MA, pro se.

David C. Grossack, Law Office of David Grossack, Boston, MA, for Lawrence H. Finklestone.

Elizabeth A. Harling, James M. Hughes, Devin & Drohan, Hingham, MA, for Franchise Consulting Group, Inc.

Daniel J. Gleason, Daniel J. Driscoll, Nutter, McClennen & Fish, Boston, MA, for Amy Robertson.

Michael J. Griffin, Sullivan, Sullivan & Pinta, Boston, MA, for George Gregson and George O. Gregson, P.C.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

## I. INTRODUCTION

The United States brought this civil action on behalf of the Federal Trade Commission ("the FTC"), see 15 U.S.C. § 56(a), against The Building Inspector of America ("TBIA"), and its three shareholders: Ralph L. Tisei, Beverly Tisei, and Lawrence Finklestone. The government seeks civil penalties, consumer redress, and injunctive relief for violations of franchising regulations issued pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 57a(a). See 15 U.S.C. §§ 45(m), 53(b) and 57b. The government alleges, in a five count complaint, that TBIA and the individual defendants violated the FTC's franchising regulations by failing to disclose certain information (and by disclosing misleading information) to prospective franchisees. It has moved for partial summary judgment on three of the five counts, while TBIA has moved for partial summary judgment on the remaining two counts. For the reasons stated below, TBIA's motion for summary judgment is **ALLOWED** and the government's motion for summary judgment is **ALLOWED IN PART AND DENIED IN PART.**

## II. THE NATURE OF THE GOVERNMENT'S CLAIMS

### A. The Regulatory Framework for Franchise Offerings

The FTC is broadly empowered to promulgate regulations prohibiting specific acts which it finds to be unfair or deceptive trade practices. 15 U.S.C. § 57a(a). Pursuant to this statutory authority, the FTC promulgated, in 1978, the so-called "Franchise Rule," 16 C.F.R. Part 436. The Franchise Rule requires franchisors to provide a prospective franchisee with a detailed disclosure statement, prior to selling a franchise. The disclosure statement must present certain enumerated pertinent facts about the franchisor's corporate history, its financial condition, the track record of other franchisees, and the background of its principal officers.

Certain states have also enacted legislation governing franchise offerings. See Cal.Corp. Code § 31110 (1992); Ill.Comp.Stat. Ch. 815 § 705/10 (1992); Ind.Code § 23–2–2.5–9 (1993); Md.Code Ann., Bus.Reg. § 14–214(a) (1992); N.Y.Gen.Bus.Law § 683(1) (1980); R.I.Gen.Laws § 19–28.1–5 (1993); Va.Code § 13.1–560 (1992). In addition to making disclosures to individual franchisees, these states ("the registration states") also require that franchisors register with state authorities, who must approve the form of their disclosures. The registration states have adopted a standardized disclosure format known as the Uniform Franchise Offering Circular ("UFOC"), which was originally developed by the Midwest Securities Commissioners Association. The UFOC requirements are similar, but not identical to those in the FTC Franchise Rule. However, in order to reduce the need for duplicative filings, the FTC has authorized franchisors to use the UFOC in lieu of the disclosure required by the FTC's Franchise Rule. See 43 Fed.Reg. 59722 (1978); 52 Fed.Reg. 22686 (1987).[1] Thus, franchisors doing business in registration states may use the same document to comply with both state registration requirements as well as those of the FTC.[2]

### B. A Brief History of TBIA

TBIA franchises home inspection services and is thus subject to the FTC's Franchise

---

1. This authorization permits franchisors to comply either with the Franchise Rule or the UFOC requirements, but does not allow them to "pick and choose" from among the requirements of these two disclosure formats. 43 Fed.Reg. 59722.

2. A revised version of the UFOC, approved by the FTC on December 30, 1993, is not at issue here. See 58 Fed.Reg. 69224 (1993).

Rule. It was founded in 1985 by Ralph Tisei, his wife Beverly, and Lawrence Finklestone. All three had prior experience with home inspections. Finklestone had been in the home inspection business since 1976, when he founded American Home Inspection Service, Inc. ("AHISI"). In 1982, a company owned by the Tiseis purchased the assets of AHISI, including its trade name, American Home Inspection. Finklestone continued to work for American Home Inspection as a "consultant." AHISI, Finklestone's old company, subsequently filed for bankruptcy.

The Tiseis were apparently quite successful in running American Home Inspection and, in 1984, Ralph Tisei conceived the idea of franchising home inspection services nationwide. Together with Finklestone and Ms. Tisei, he formed a new corporation, TBIA, to implement this idea. TBIA was incorporated in 1985, with Ralph Tisei as its president and a 50% shareholder, Finklestone as Vice President for Sales and Marketing and a 25% shareholder, and Beverly Tisei as Treasurer and a 25% shareholder.

Although all of TBIA's shareholders had experience in the home inspection business, none of them knew much about the technical aspects of franchising. Accordingly, even before incorporation, Ralph Tisei contracted with a consulting firm, Franchise Consulting Group ("FCG"), to assist in the development of the necessary materials to run a franchise business. In particular, FCG was engaged to assist in developing TBIA's franchise agreement, and the UFOC which TBIA would be required to submit to state regulators and prospective franchisees.

The initial draft of the TBIA UFOC was completed in late 1984. According to the defendants, the drafting was done entirely by FCG personnel, using information supplied by Messrs. Tisei and Finklestone. Once the document was completed, Mr. Tisei reviewed it in its entirety, and made a few corrections.

TBIA began operations in 1985, and issued its first UFOC in March of that year. As required by the UFOC requirements, the March 1985 UFOC identified Lawrence Finklestone as TBIA's Vice President for Sales and Marketing. However, it failed to disclose the bankruptcy of Finklestone's former company, AHISI. This failure soon came to the attention of Amy Robertson, an attorney who had formerly worked for FCG, and who had been retained by TBIA as franchise counsel. Robertson advised TBIA's management that under the UFOC requirements, TBIA was required to disclose the bankruptcy of any company of which one of TBIA's officers had been an officer. TBIA responded by changing Finklestone's title to "Director of Sales and Marketing" and issuing a new UFOC in November, 1985, which omitted any mention of the bankruptcy, or of Finklestone whatsoever.

TBIA's franchising operation was, initially, quite successful. During the 1985–1991 period, TBIA sold over 80 franchises, at prices ranging from $12,000 to $50,000. However, in the late 1980s, TBIA's fortunes took a turn for the worse. TBIA started to receive complaints from franchisees concerning the level of advertising and training support which they were receiving. A conflict developed within TBIA concerning how to handle these complaints. Ralph Tisei felt that the complaints were groundless, and refused to accommodate the franchisees' demands. Lawrence Finklestone and Beverly Tisei desired to take a more conciliatory approach.

As a result of these conflicts, TBIA became embroiled in litigation with franchisees. In some cases, franchisees refused to pay royalties or advertising fees to TBIA. TBIA sued these franchisees who, in turn counterclaimed that TBIA had breached its franchise agreement, and had violated the FTC's Franchise Rule. Other franchisees did not wait to be sued, and took actions directly against TBIA, seeking rescissions of their franchise agreements.

It was during this period that more problems were discovered with the content of TBIA's UFOC. In 1989, California state authorities rejected TBIA's UFOC registration. Among other reasons, the California authorities objected that the financial statements which accompanied the UFOC did not appear to have been properly prepared. The UFOC requires that TBIA disclose audited financial statements for the three prior fiscal years. However, although the financial

statements which TBIA submitted purported to have been audited, they did not appear to the California authorities to have been prepared in compliance with generally accepted accounting principles (GAAP) or generally accepted auditing standards (GAAS).

TBIA's financial statements were prepared by Samuel Cohen, a licensed public accountant who had performed accounting work for Ralph Tisei in various capacities for many years. Cohen had been retained by Tisei to prepare TBIA's tax returns, and to perform miscellaneous bookkeeping work, but had never been requested to conduct an independent audit of TBIA's financial statements. Nonetheless, Cohen had, since TBIA's inception, submitted yearly financial statements purporting to be audited, which had been included in TBIA's UFOCs.

In response to the objections raised by California authorities, TBIA submitted a revised financial statement which more fully complied with GAAP. TBIA also submitted a letter from Cohen promising to comply with GAAS in the subsequent year. In its submission the following year, 1990, TBIA included two separate financial statements with its UFOC. One, prepared by the firm of Burke, Dennehy & Co., was merely a compilation, and did not purport to have been audited or independently reviewed by the firm. The second statement was prepared by Cohen, and purported to have been prepared in compliance with GAAS and GAAP. However, as Cohen later admitted, he never audited any of TBIA's financial statements.

In early 1991, the FTC, responding to complaints from franchisees, initiated its investigation of TBIA's franchising practices. In 1992, in response to widespread franchisee dissatisfaction with his management style, Ralph Tisei handed day-to-day management control over the company to Beverly Tisei and Lawrence Finklestone, although he retained the title of president. By this time, however, the company was in disarray. The number of active franchisee had dropped to below 20 and, in the wake of the ongoing FTC investigation, TBIA was unable to sell any new ones. Only one franchise was sold after 1992. In early 1994, Lawrence Finkle-

stone, who had been TBIA's principal salesman, left TBIA's employ.

## C. *TBIA's Alleged Violations*

The government alleges that TBIA violated the Franchise Rule and/or the UFOC requirements in three respects.

First, the government contends that TBIA made unsubstantiated claims to prospective franchisees concerning the potential earnings of TBIA franchises. Pursuant to the Franchise Rule, franchisors may only make such earnings claims if they have a reasonable basis for making them, and if they are accompanied by a so-called "earnings claims document" containing various disclosures and warnings required by the rule. *See* 16 C.F.R. § 436.1(b)–(e). Item 19 of the UFOC requirements requires similar written documentation. *See* CCH Business Franchise Guide ¶ 5819 (1980). According to the government, the UFOC distributed by TBIA for at least part of the 1985–1993 period contained written earnings claims which lacked an adequate basis in fact, thereby violating the Franchise Rule and UFOC Requirements.

The government also contends that TBIA failed to properly disclose information concerning TBIA's executive officers. The Franchise Rule requires that potential franchisees be advised of the names and previous five years' business experience of each of the franchisor's directors and executive officers (including the chief executive and chief operating officer, financial, franchise marketing, training and service officers), their (and the franchisor's) criminal and civil litigation histories involving certain categories of lawsuits in the previous seven fiscal years, and their (and the franchisor's) involvement with certain bankruptcy proceedings in the previous seven fiscal years. 16 C.F.R. § 436.1(a)(2), (4), (5). Similar provisions are found in Items 1–4 of the UFOC Requirements, except that the disclosure period for litigation history is extended to ten years, and the disclosure period for bankruptcy history is extended to fifteen years. *See* CCH Business Franchise Guide ¶¶ 5801–5804 (1980). According to the government, TBIA violated these provisions by failing to disclose defen-

dant Finklestone's identity as Director of Sales and Marketing, by failing to disclose that a company of which Finklestone had been a principal had filed for bankruptcy, by failing to disclose the existence and results of various arbitrations and civil lawsuits which were filed against TBIA and/or Ralph Tisei, and by failing to disclose that a company of which Ralph Tisei had been the Treasurer had filed for bankruptcy.

Finally, the government contends that TBIA disclosed to potential franchisees financial statements which purported to be audited, but which in fact were not audited according to generally accepted auditing standards. The Franchise Rule and the UFOC Requirements both require every franchisor to provide prospective franchisees with audited financial statements describing the financial condition of the franchisor. 16 C.F.R. § 436.1(a)(20); CCH Business Franchise Guide ¶ 5821. Here, the government alleges that TBIA provided written financial statements accompanied by an opinion letter from an accountant stating that the financial statements had been audited when, in fact, the accountant never conducted an audit of TBIA's financial records.

## III. DISCUSSION

### A. Defendant TBIA's Motion for Summary Judgment

TBIA has moved for summary judgment with respect to Counts I and II, which relate to TBIA's allegedly unsubstantiated earnings claims. Count I alleges that TBIA made earnings claims without providing proper written documentation, while Count II alleges that TBIA made these claims without a proper factual basis. TBIA contends that it ceased making earnings claims to prospective franchisees in March, 1988, and, since this action was not filed until April 15, 1993, the government's allegations are barred by the three year statute of limitations found at 15 U.S.C. § 57b(d). The government responds that the 3 year statute of limitations does not apply to its claims for civil penalties and

equitable relief and that, in any event, there is a genuine issue of fact as to whether TBIA made improper earnings claims after March, 1988.

### 1. Summary Judgment Standard

A motion for summary judgment will be granted when all the relevant pleadings, viewed in the light most favorable to the non-moving party, present no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir.1992); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). Where the defendant moves for summary judgment, it bears an initial burden of pointing out the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the plaintiff to demonstrate that there is evidence sufficient to support his claims at trial. *Id.* at 322, 106 S.Ct. at 2552.

### 2. The Relevant Limitations Period

TBIA relies on the three year limitations period found at 15 U.S.C. § 57b(d). Section 57b(a)(1) empowers the FTC to seek redress on behalf of individual consumers who have been damaged by defendants who engage in unfair or deceptive acts or practices, in violation of FTC regulations. Section 57b(d) limits the time for bringing such "consumer redress" actions. It states, in relevant part, that "[n]o action may be brought by the Commission under this section more than 3 years after the rule violation to which an action under subsection (a)(1) relates."

Nothing in this section, however, purports to limit other types of civil actions which the government is entitled to bring against those who violate the FTC Act.[3] In particular, this section does not apply to actions for civil penalties, *see* 15 U.S.C. § 45(m), or for equitable relief, *see* 15 U.S.C. § 53(b). Actions

---

3. Because the issue was not briefed by the parties, the Court expresses no opinion at this time as to whether consumer redress may be obtained independently of Section 19, under Section 13(b) of the FTCA, 15 U.S.C. § 53(b). *See F.T.C. v. Amy Travel Service, Inc.*, 875 F.2d 564, 571 (7th Cir.1989).

for civil penalties are governed by the five-year limitations period found at 28 U.S.C. § 2462. *United States v. Ancorp Services, Inc.*, 516 F.2d 198, 200, n. 5 (2nd Cir.1975); *F.T.C. v. Lukens Steel Co.*, 454 F.Supp. 1182, 1185, n. 2 (D.D.C.1978).[4]

Moreover, actions for injunctive relief under Section 53(b), do not have any limitations period. That section provides that the government may bring suit to enjoin violations of the FTC Act "whenever the [FTC] has reason to believe" that a party is violating or is about to violate the Act. 15 U.S.C. § 53(b). Thus, while the government has the burden under this section to prove that the defendant is presently violating or is likely to violate the FTC Act, there is no time limitation on the prior acts of violation which the government may introduce to meet this burden.

### 3. *The Government's Evidence of Violations*

■ Here TBIA claims that there is no evidence that it made earnings claims to prospective franchisees after March, 1988. In support of its claim that TBIA made claims after that date, the government has submitted "Acknowledgements of Receipt," dated August 2, 1988 and October 29, 1988, and signed by two individuals who later purchased franchises from TBIA. Each acknowledgement contains the following language:

> The undersigned personally and/or as an officer or partner of the proposed Franchisee, acknowledges receipt of the 'Franchise Offering Circular For Prospective Franchisees Required by the Federal Trade Commission' including all attached documents."

In addition, the acknowledgements contain the notation "UFOC8/87" in the lower left hand corner. The government concludes that this notation "strongly suggests that

both [franchisees] received TBIA's August 1987 generic UFOC, with written earnings claims." I disagree. The government has had ample time to conduct extensive discovery in this action and has not been able to produce any competent evidence to support this conjecture. Such conjectural or problematic evidence alone will not create a genuine issue of material fact to defeat summary judgment. *See Medina–Munoz*, 896 F.2d at 8.

Accordingly, I find that the government has not shown that there is a genuine issue of fact as to whether TBIA made earnings claims after March, 1988. Because this date falls outside *both* the three and five-year statutes of limitation, I will **ALLOW** TBIA's motion for partial summary judgment with respect to the government's claims for civil penalties (pursuant to Section 5(m)) and consumer redress (pursuant to Section 19) under Counts I and II of the First Amended Complaint.[5]

### B. *The Government's Motion for Summary Judgment*

The government has moved for summary judgment on Counts III through V. These counts allege that TBIA failed to disclose Lawrence Finklestone as one of its officers, failed disclose required information about prior litigation and bankruptcy filings, and disclosed financial statements which purported to be audited when they were not. TBIA responds that there are genuine issues of material fact as to whether Finklestone was an officer within the meaning of the UFOC requirements, whether the undisclosed litigation was material, and whether TBIA was aware that the financial statements it was distributing were not audited. Moreover, defendants Ralph and Beverly Tisei contend that there are material issues of fact as to

---

4. 28 U.S.C. § 2462 reads as follows: "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon."

5. In its memorandum in opposition to TBIA's motion for partial summary judgment, the government also makes reference to evidence that TBIA distributed earnings claims in Michigan for a one year period following March 31, 1987, and that it distributed earnings claims to certain New York residents in 1986 and 1987. None of this evidence suggests that TBIA continued to make these claims after March, 1988.

whether they were personally aware of whatever actionable conduct in which TBIA may have engaged.[6]

### 1. Whether TBIA Failed to Comply with the UFOC *Requirements*

#### a. Failure to Disclose Finklestone as a *Principal Officer*

█ Item 2 of the UFOC[7] Requirements requires disclosure of,

> the directors, trustees and/or general partners, as the case may be, the principal officers (including the chief executive and chief operating officer, financial, franchise marketing, training and service officers) and other executives or subfranchisors who will have management responsibility in connection with the operation of the franchisor's business relating to the franchises offered by this offering circular and all franchise brokers.

CCH Business Franchise Guide ¶ 5802. It is undisputed that during the period after March 1985 through 1991, TBIA failed to disclose Finklestone under this provision. It is also undisputed that during this same period, Finklestone held himself out as TBIA's Director of Sales and Marketing, that his duties under this title were identical to those under his former title of "Vice President," and that he was the primary person at TBIA who sold franchises. Finklestone's other responsibilities included offering marketing advice to actual franchisees once they had bought a TBIA franchise.

TBIA contends that there was a material issue of fact as to Finklestone's actual status in the company during that period since, according to TBIA, Finklestone received no salary between 1985–1991, but worked strictly on commission, which was reported on IRS Form 1099, rather than W–2. TBIA fails, however, to articulate why this fact is materi-

al. The UFOC requires that TBIA disclose its "franchise marketing" officer. It also requires that TBIA disclose "other executives ... who will have management responsibility in connection with the operation of the franchisor's business relating to the franchises offered." Finally, the UFOC requires disclosure of all "franchise brokers." A "franchise broker" is defined as "any person engaged in the business of representing a franchisor or subfranchisor in offering for sale or selling a franchise...." CCH Business Franchise Guide ¶ 5796. The government's evidence clearly demonstrates that, notwithstanding his form of compensation, Finklestone was either TBIA's chief franchise marketing officer, or a "franchise broker" as that term is defined, and should have been disclosed.

#### b. *TBIA's Failure to Disclose Prior Litigation*

Under Item 3 of the UFOC requirements, TBIA was required to disclose all pending administrative, criminal and material[8] civil litigation in which it, or one of the persons required to be identified under UFOC Item 2, was charged with "violation of any franchise law, fraud, embezzlement, fraudulent conversion, restraint of trade, unfair or deceptive practices, misappropriation of property or comparable allegations." CCH Business Franchise Guide ¶ 5803. TBIA was also required to reveal whether it, or any of the persons required to be identified under UFOC Item 2, had, during the previous 10 year period

> been convicted of a felony or pleaded nolo contendere to a felony charge or been held liable in a civil action by final judgment or been the subject of a material complaint or other legal proceedings if such felony, civil action, complaint or other legal proceeding involved violation of any franchise law,

---

6. Defendant Finklestone has not filed an opposition to the government's motion for summary judgment.

7. TBIA chose to use the UFOC disclosure format in all its disclosure documents, and all of its defenses in this action refer to compliance with the UFOC requirements. Accordingly, only the UFOC requirements, and not the Franchise Rule requirements, will be referenced herein.

8. For the purpose of this requirement, an action, complaint or judgment is considered material if there is a substantial likelihood that:

> (a) A reasonable prospective franchisee would consider it important in the making of a decision relating to the named franchised business; or
> (b) It would have or has had any significant financial impact on the franchisor ... CCH Business Franchise Guide ¶ 5803.

fraud, embezzlement, misappropriation of property or comparable allegations.

CCH Business Franchise Guide ¶ 5803.

The government has submitted the following undisputed evidence of 11 civil lawsuits and one arbitration which it claims TBIA was required, but failed, to disclose to prospective franchisees in a timely fashion:

On March 9, 1988, Anthony Biancucci filed an arbitration against TBIA, alleging that it had violated the FTC's Franchise Rule by making unsupported earnings claims and had violated New York State law by failing to comply with a mandatory ten day waiting period between offer and acceptance of a franchise agreement. On October 5, 1988, the arbitrator awarded Mr. Biancucci $15,-000. Because it alleged a violation of franchise law, TBIA was required to disclose the existence and outcome of this arbitration. Nonetheless, TBIA continued to distribute UFOCs which made no mention of the arbitration until March 31, 1989.

On September 28, 1990, Ralph Tisei was sued by The Bank for Savings for having defaulted on promissory notes with face values in excess of $1,000,000. Although this action resulted in a judgment against Mr. Tisei, it was never disclosed by TBIA.[9]

On January 24, 1992, judgment of $30,-024.70 was entered against Ralph Tisei in a Massachusetts state court breach contract action filed by Metro Home Inspection, Inc. TBIA nonetheless continued to distribute UFOCs which did not mention this judgment until June, 1993.

On April 5, 1993 judgment was entered against Ralph Tisei in a Maine state court proceeding for breach of a mortgage promissory note, filed by the Sanford Institution for Savings. TBIA did not disclose this information until June 30, 1993.

On December 3, 1990, TBIA filed a breach of contract action against Louis Belardinelli, one of its franchisees. On February 26, 1991, Belardinelli filed counterclaims against TBIA alleging breach of the franchise agreement, violations of the FTC Franchise Rule, and fraud. TBIA did not disclose this litiga-

tion until September 1991, and again failed to disclose it in UFOCs dated June 1992 and June 1993.

On September 7, 1990, TBIA filed a similar breach of contract claims against Barry Benevento, Donald Jupa, Daniel Loreti and Zack Levy. In December, 1990, all of these defendants counterclaimed, alleging breach of the franchise agreement, violation of the FTC Franchise Rule, and fraud. TBIA did not disclose any of these claims until September 1991, and again failed to disclose them in UFOCs dated June 1992 and June 1993.

On April 1, 1991, franchisee William Chow filed an action against TBIA alleging breach of the franchise agreement, and violations of the Franchise Rule. TBIA did not disclose the existence of this action until September 1991, and then failed to disclose it on UFOCs dated June, 1992 and June, 1993.

On May 24, 1991, TBIA filed a breach of contract claim against franchisee Lane Quevedo. On August 1, 1991, Quevedo filed a counterclaim against TBIA for breach of the franchise agreement, violation of the FTC Franchise Rule, and fraud. TBIA disclosed this claim in September, 1991, but failed to disclose it in UFOCs dated June, 1992 or June, 1993.

Finally, on October 8, 1991, TBIA filed a breach of contract claim against franchisee John Moreno. On October 30, 1991, Moreno filed a counterclaim against TBIA for breach of the franchise agreement, violation of the FTC Franchise Rule, and fraud. TBIA never disclosed the existence of this claim.

■ TBIA raises numerous defenses, none of which is meritorious. First, with respect to the claim of Metro Home Inspection, Inc. against Ralph Tisei, TBIA contends that final judgment never entered in this case because it is still "pending on appeal in the Essex Superior Court." There are two problems with this. First, TBIA has failed to provide any documentation of the alleged appeal, and this Court cannot consider counsel's unsupported allegations in a motion for summary judgment. Second, even if an appeal had been taken, this does not deprive the trial court's judgment of its "final" character.

9. The record does not indicate the date or amount of this judgment.

Contrary to TBIA's suggestion, the term "final judgment" refers, as a matter of law, to the judgment of a trial court, from which an appeal may be brought. *See* Mass.R.Civ.P. 54(a) (defining "final judgment" as the final act of the trial court adjudicating the rights of the parties).

■ TBIA's second defense is that it was not required to disclose the existence of the Biancucci arbitration because it was not "material" within the meaning of the UFOC requirements. Under these requirements, pending civil actions need only be disclosed if they are "material." TBIA contends that this arbitration was not material because it involved an amount ($15,000) which was less than 15% of TBIA's assets. However, while it is true that one of the definitions of materiality contained in the UFOC requirements uses this 15% test, the principal definition merely requires that "a reasonable prospective franchisee would consider it important in the making of a decision relating to the named franchise business." CCH Business Franchise Guide ¶ 5803. It is pure sophistry on TBIA's part to argue that a reasonable prospective franchisee would not consider it important that another franchisee was claiming that TBIA had violated the FTC Franchise Rule by making unsupported representations concerning potential earnings. Such a claim would bring into doubt the integrity and competence of the franchisors regardless of the actual amount of damages claimed.

■ Finally, TBIA claims that there is a issue of fact as to whether the seven counterclaims against TBIA by franchisees were material within the meaning of the UFOC requirements. TBIA claims (again without submitting competent evidence to this effect) that six of the seven actions were settled before motions for summary judgment were filed. TBIA also claims that only one franchise was sold during the 1992–1993 period. TBIA suggests that these facts mitigate against a finding that the actions were material. I disagree.

The materiality of the counterclaims here is self-evident. They involve claims by almost 10% of all of TBIA's franchisees that TBIA violated the FTC's Franchise Rule when selling them their franchises. TBIA does not assert that these claims were dismissed for failure to state a claim, or on summary judgment. Rather, TBIA admits that it settled these claims for an undisclosed amount. This is clearly the kind of information that "a reasonable prospective franchisee would consider important in making a decision relating" to buying a TBIA franchise.

The fact that TBIA failed to sell more than one franchise during 1992–1993 is also irrelevant. The FTC has placed an absolute obligation on franchisors to disclose information to prospective franchisees. This obligation is not in any way lessened by the franchisor's failure to recruit franchisees.

### c. *TBIA's Failure to Disclose Prior Bankruptcies*

■ Item 4 of the UFOC requirements requires, *inter alia*, disclosure of whether any of the officers or general partners of the franchisor were principal officers or partners of a company which was adjudged bankrupt or was reorganized within the 15 prior years. The government alleges that TBIA violated this requirement in two respects. First, because Mr. Finklestone was not listed as an officer of TBIA, TBIA failed to disclose that Mr. Finklestone's former business, AHISI, filed for bankruptcy in 1984.[10] Second, TBIA failed to disclose that Ralph Tisei, who was TBIA's president, had been the treasurer of Wakefield Construction Company, a firm which had filed for bankruptcy in 1973 or 1974.

TBIA has offered no defense to its failure to list the Wakefield Construction Company bankruptcy. With respect to its failure to list the bankruptcy of Mr. Finklestone's former business, TBIA also contends that even if Finklestone should have been disclosed, there is a material issue of fact as to whether the failure to disclose the bankruptcy of Finklestone's former business was a "material

10. AHISI changed its name to Southeast Massachusetts Homes, Inc. the day before it filed its bankruptcy petition.

fact" within the meaning of the Franchise Rule. The Franchise Rule defines "material fact" as "any fact, circumstance, or set of conditions which has a substantial likelihood of influencing a reasonable franchisee or a reasonable prospective franchisee in the making of a significant decision relating to a named franchise business or which has any significant financial impact on a franchisee or prospective franchisee." 16 C.F.R. § 436.2.

TBIA's argument is unavailing on two grounds. First, TBIA has opted to comply with the UFOC requirements rather than the Franchise Rule. The definitions in the Franchise Rule are therefore irrelevant here. Second, even if this definition of materiality did apply to UFOC disclosures generally, there is nothing in Item 4 of the UFOC which limits the requirement to disclose former bankruptcies to those which are "material."

#### d. TBIA's Failure to Have Audited its "Audited" *Financial Statements*

■ Item 21 of the UFOC requirements requires the franchisor to disclose audited financial statements to prospective franchisees. Between 1986 and 1993, TBIA distributed UFOCs containing financial statements which purported to be audited by Samuel Cohen, a Massachusetts licensed public accountant. In fact, Cohen now admits, he "didn't audit anything."

TBIA claims there is a material issue of fact as to whether TBIA's officers were aware that Cohen had not audited the financial statements as required by law. TBIA contends that none of its officers were familiar with accounting terminology, and in particular with the meaning of the term "audited," and that they reasonably relied on Mr. Cohen's assurances that the reports he submitted had, in fact, been audited. However, while the officers' purported lack of knowledge or good faith may be germane to their personal liability in this matter, it does not mitigate TBIA's failure to comply with the UFOC requirements. *See United States v. Johnson,* 541 F.2d 710, 712 (8th Cir.1976) *cert. den.* 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977) (good faith is not a defense to an action for civil penalties for violation for F.T.C. order); *F.T.C. v. Amy Travel*

*Service, Inc.,* 875 F.2d 564, 573 (7th Cir.1989) (intent is not an element in an FTC violation); *F.T.C. v. Pioneer Enterprises, Inc.,* 1992 WL 372350 (D.Nev.1992) at p. *1.

#### 2. *Individual Liability*

For the reasons stated above, I find that the undisputed evidence shows that TBIA violated Section 5(a) of the FTCA, as alleged by the government in Counts III through V.

■ Once the practices or acts of a corporation have been found to have violated the FTCA, the corporation's individual officers may share in the corporation's liability if it can be shown that they participated directly in the practices or acts, or had the authority to control them. *Amy Travel,* 875 F.2d at 573. The government need not prove that an individual had a subjective intent to violate the FTC Act, or even that he was aware of the wrongful activity. It is enough to show that the individual had either "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Id.* at 574; *F.T.C. v. National Business Consultants, Inc.,* 781 F.Supp. 1136, 1153 (E.D.La.1991); *F.T.C. v. Kitco of Nevada, Inc.,* 612 F.Supp. 1282, 1292 (D.Minn.1985); *F.T.C. v. Jordan Ashley, Inc.,* 1994 WL 200775, *3 (S.D.Fla. 1994); *Pioneer Enterprises,* 1992 WL 372350, *1.

In support of its contention that the three individual defendants are personally liable under this standard, the government asserts that the evidence shows that they were TBIA's sole shareholders, and controlled all aspects of the business. In addition, the government contends, the evidence shows that Ralph Tisei made all major corporate policy decisions, could hire and fire attorneys, consultants, and employees, controlled TBIA's finances, and engaged TBIA's accountant. Moreover, Lawrence Finklestone was, according to the government, the person most responsible for development of TBIA's marketing program and for franchise sales, and was fully aware of the decision to remove him from the UFOC to avoid revealing the bankruptcy of his former company.

In response, the defendants [11] contend that there are genuine issues of material facts concerning the knowledge, control and participation of the three individual defendants in various aspects of TBIA's business affairs. In addition, Ralph Tisei contends that some of the signatures of corporate officers on numerous of the infringing UFOCs were forged by Amy Robertson and George Gregson, TBIA's former general counsel, who prepared and submitted them without his prior approval.

#### a. *Ralph Tisei*

 Ralph Tisei was the founder and president of TBIA and its principal shareholder. He made all of the major corporate decisions, and was in charge of hiring all of the professionals which TBIA employed. Nonetheless, Mr. Tisei contends that he was ignorant of the factual misrepresentations contained in TBIA's UFOCs. Claiming to have only a high school education, Mr. Tisei states that he entrusted all TBIA's legal matters to its attorneys, and in particular to Amy Robertson, who prepared most of the misleading UFOCs at issue here.

Mr. Tisei's claim of ignorance is entirely implausible. In the first place, it is undisputed that Mr. Tisei was quite aware of the problems with respect to Mr. Finklestone's disclosures, having made the decision to change Finklestone's title from "Vice President" to "Director." Moreover, each of the UFOCs which TBIA filed with state regulators contains a certification signed by Mr. Tisei, stating he has read the contents of the UFOC, and certifying that the contents are "true and correct." Although Mr. Tisei claims that he signed these documents without reading the attached UFOCs, such willful ignorance is no defense in a case such as this. *Amy Travel*, 875 F.2d at 574 ("reckless indifference to the truth or falsity of misrepresentations" is sufficient to hold responsible corporate officer liable for violation of FTC Act); *National Business Consultants*, 781 F.Supp. at 1153 (same); *Kitco of Nevada*, 612

F.Supp. at 1292 (same); *Jordan Ashley*, 1994 WL 200775, *3 (same); *Pioneer Enterprises*, 1992 WL 372350, *1 (same).

Mr. Tisei also claims that he was unfamiliar with the UFOC requirements, and "totally entrusted" TBIA's attorneys to prepare TBIA's UFOCs for him. This excuse is also unavailing. Mr. Tisei was aware, or should have been aware, of the misrepresentations contained in the UFOCs he certified to be true. Each of the UFOCs Mr. Tisei signed restated the bankruptcy and litigation disclosure criteria, and certified that no litigation or bankruptcies, other than those listed, satisfied them. The existence of prior litigation and bankruptcies are facts of which Mr. Tisei was, or should have been, aware. Moreover, each UFOC which Mr. Tisei signed contained financial statements which purported to be audited by Mr. Cohen. It is clear from the record that Mr. Tisei never made even minimal inquiries into whether Mr. Cohen was, in fact, auditing TBIA's books. Indeed, since Mr. Tisei admits never having discussed with Mr. Cohen the financial statements which Cohen submitted for UFOC purposes, and admits never having never read the UFOCs he signed, he could not even know what it was that he was certifying to be true.

Although Mr. Tisei claims to have relied entirely on the advice of his attorneys, "[r]eliance on advise of counsel [is] not a valid defense on the question of knowledge." *Amy Travel*, 875 F.2d at 575; *Pioneer Enterprises*, 1992 WL 372350 at *3. When an individual signs a document and certifies the truth of its contents, he is obliged to satisfy himself that what he has signed is accurate. While an attorney may advise him about the legal implications of certain acts, an individual's factual representations are his responsibility. Here, Mr. Tisei attempted to avoid his responsibility through studied ignorance of his legal obligations and the facts relating to them.[12]

---

11. Lawrence Finklestone has not responded to the plaintiff's motion for summary judgment.

12. Mr. Tisei claims that some of the signatures on the UFOCs were forged by Amy Robertson. However he has not specified which documents were, in fact, forged, and he has, in any event, admitted signing at least some of the UFOCs without reading them.

### b. *Lawrence Finklestone*

■ While the government's evidence conclusively proves that Ralph Tisei had ultimate managerial control of TBIA, and that he was, or should have been, aware of the factual misrepresentations in TBIA's UFOCs, the evidence against Lawrence Finklestone is more ambiguous. Although Mr. Finklestone does appear to have had some knowledge of at least some of the misrepresentations contained in the UFOC [13], the record is less than clear as to whether he "participated directly in the practices or acts, or had the authority to control them." *Amy Travel*, 875 F.2d at 573. Finklestone's principal responsibility in TBIA was sales. Although he assisted TBIA's counsel in drafting parts of the UFOC, the record does not reveal whether he was involved in drafting the sections at issue here, or whether he had actual authority in the company to determine the final content of the UFOC which was distributed to state regulators and potential franchisees. In addition, although there is some evidence that he was involved in revising Samuel Cohen's 1989 financial statements in response to California's objections, the record does not indicate the extent of this involvement, or even the nature of his role.[14] For his part, Finklestone contends that on numerous occasions, he recommended replacing Cohen with a more competent accountant, but was overridden on each occasion by Ralph Tisei.

Based on this evidence, I find that there are disputed issues of material fact concerning Lawrence Finklestone's involvement in the drafting of TBIA's misleading UFOCs. There is no evidence that Finklestone had the ability to control either Ms. Robertson or Mr. Cohen and the evidence of Finklestone's direct involvement in the making of misleading statements is sketchy at best.

### c. *Beverly Tisei*

■ Finally, with respect to Beverly Tisei, the government's case is practically nonexistent. Other than pointing out that Ms. Tisei was TBIA's treasurer, there is no evidence in the record that she was ever involved in authorizing, drafting or approving the content of TBIA's UFOCs. What evidence there is of her role in the business suggests that it principally involved handling TBIA's accounts, paying bills and the like, and occasionally dealing with franchisees over the telephone. This, without more, is clearly insufficient to make her vicariously liable for the TBIA's wrongful activities.

### C. *Appropriate Relief*

Upon a finding that a business has engaged in unfair or deceptive acts, the FTCA empowers this court to provide three types of relief: civil penalties, injunctive relief and consumer redress. 15 U.S.C. §§ 45(m), 53(b) and 57b. The government's motion for summary judgment seeks a ruling that all three remedies are appropriate in this instance, although it reserves for a later time determination of the amount that such penalties and consumer redress should take. For the reasons stated below, I find that the government is entitled to each of the forms of relief it seeks.

#### 1. *Injunctive Relief*

■ Section 13(b) of the FTCA, 15 U.S.C. § 53(b), authorizes the FTC to seek permanent injunctive relief, "in a proper case." In issuing permanent injunctive relief, a district court has "broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *Brown v. Trustees of*

---

**13.** For example, Mr. Finklestone testified that his title was changed from "Vice President" to "Director of Sales and Marketing" in order to avoid having disclose the bankruptcy of his former company in the UFOC. According to Mr. Finklestone, this change was made at the direction of Ralph Tisei.

**14.** The government's sole evidence concerning Finklestone's involvement is correspondence between Amy Robertson and various TBIA personnel, including Finklestone. The correspondence suggests that Finklestone was Robertson's contact at TBIA concerning the problems with Cohen's financial statements, and makes reference to explanatory notes in TBIA's revised financial statement which Finklestone had a hand in drafting. However, the government has presented no testimony explaining this correspondence, or elaborating on Finklestone's role in the incident.

*Boston University,* 891 F.2d 337, 361, n. 23 (1st Cir.1989) *quoting N.L.R.B. v. Express Publishing Co.,* 312 U.S. 426, 435, 61 S.Ct. 693, 699, 85 L.Ed. 930 (1941). At the same time, an injunction should be narrowly tailored to give only the relief to which the plaintiff is entitled. *Id.,* 891 F.2d at 361. This court may not simply enjoin the commission of unlawful acts which are not associated with those which the defendants have been found to have committed. *Id.*

██ The government's undisputed evidence clearly supports the issuance of an injunction in this case. The evidence shows that, left to their own devices, TBIA's management has been unable or unwilling to take seriously its obligation to comply with the law. TBIA has been in virtually continuous violation of FTC franchising regulations since it was established in 1985. Moreover, the evidence shows that TBIA's management has taken little or no interest in complying with the regulations. In the two instances in which TBIA was confronted with the shortcoming of its UFOC, its management chose in one instance (involving the AHISI bankruptcy) to attempt to circumvent the rule, and in the other (involving Mr. Cohen's financial statements), to create the appearance of compliance without ever addressing the underlying problem.

Moreover, there is nothing in the record to suggest that TBIA has changed its ways. Although TBIA appears to have ceased to offer new franchises for the moment, it remains a going concern and could resume at any time. Ralph Tisei, to this date, contends that even if TBIA violated FTC regulations, he did nothing wrong, since he remained studiously ignorant of both TBIA's legal obligations and the efforts of his attorneys to comply with them. Further, although Ralph Tisei has ceased to actively participate in TBIA's affairs, he remains a 50% shareholder and retains the title of president. Accordingly, I find that the government is entitled to injunctive relief against TBIA and Ralph

Tisei.[15] The government is invited to submit a proposed form of injunctive order.

### 2. *Civil Penalties*

██ Section 5(m)(1)(A) of the FTCA authorizes the government to seek and this court to impose civil penalties of up to $10,000 per violation,[16] on any person or corporation who violates an FTC rule "respecting unfair or deceptive acts or practices ... with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A). In determining the amount of penalty, a court must consider the defendant's "degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 15 U.S.C. § 45(m)(1)(C).

Applying this standard, I find that defendants TBIA and Ralph Tisei are liable for civil damages under Section 5(m)(1)(A). The violations which TBIA and Mr. Tisei committed involved outright misstatements to potential franchisees, on subjects highly material to their decision to purchase franchises. TBIA's UFOC specifically stated that no litigation or bankruptcies, other than those listed, satisfied the criteria in the UFOC requirements. The UFOC also stated that the financial data concerning TBIA had been audited. All of these statements concerned facts which were highly relevant to potential franchisees, and, because of their falsity, were objectively "unfair or deceptive" within the meaning of Section 5(m)(1)(A).

### 3. *Consumer Redress*

The final type of relief sought by the government is consumer redress. Under Sections 19(a)(1) and 19(b) of the FTCA, 15 U.S.C. §§ 57b(a)(1), 57b(b), this Court may, upon a finding that the defendants violated an FTC rule prohibiting unfair or deceptive practices, order "such relief as the court finds necessary to redress injury to consum-

---

**15.** If the liability of Beverly Tisei or Lawrence Finklestone is established at trial, I will consider arguments relative to injunctive relief against them at that time.

**16.** Each day of an ongoing violation is considered a separate violation for the purposes of computing the maximum allowable penalty. 15 U.S.C. § 45(m)(1)(C).

ers or other persons, partnerships, and corporations resulting from the rule violation." [17]

 In order to obtain relief on behalf of a particular class of consumers, the government need not show that every consumer in the class actually relied upon the defendants' misrepresentations to his detriment. Rather, the government need only prove that the defendants made material misrepresentations which were of the type that a reasonable and prudent person would rely upon, that the misrepresentations were widely disseminated, and that franchisees purchased the defendants' franchises. *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 605–606 (9th Cir. 1993); *F.T.C. v. American Standard Credit Systems*, 874 F.Supp. 1080, 1089 (C.D.Cal. 1994); *Kitco of Nevada*, 612 F.Supp. at 1292. Proof of these elements shifts the burden to the defendants to prove the absence of reliance. *Id.*

 For the reasons stated above, the government has clearly met its burden here. TBIA engaged in consistent misrepresentation of the background of its executives, its litigation history, and its financial condition to every franchisee who purchased from them. Thus, absent a showing by defendants that a particular franchisee did not rely on these representations, the government will be entitled to relief under Section 19.[18]

## IV. CONCLUSION

For the foregoing reasons, the motion of The Building Inspector of America for partial summary judgment is **ALLOWED**. The government's motion for partial summary judgment is **ALLOWED** with respect to defendants The Building Inspector of America and Ralph Tisei, and is **DENIED** with re-

spect to defendants Beverly Tisei and Lawrence Finklestone.

**SO ORDERED.**

---

17. The government appears to suggest in its brief that this Court must find that the practice was one "which a reasonable man would have known under the circumstances was dishonest or fraudulent." Such a finding is only necessary where the deceptive practice does not violate an FTC rule, but instead is the subject of a cease and desist order. *Compare* 15 U.S.C. §§ 57b(a)(1) and 57b(a)(2).

18. Because the government has not requested that the Court determine the appropriate amount of awards under Section 5(m) or 19 at this juncture, neither side has addressed the question of actual reliance by individual franchisees. This issue is best reserved until after a determination of the counts against the remaining defendants, Ms. Tisei and Mr. Finklestone.