21 F.Supp.2d 187 (1998)
FEDERAL TRADE COMMISSION, Plaintiff,
v.
P.M.C.S., INC., Dennis Harmon, Philip T. Bukowsky, Jay Lerner, M.B.C., Inc., Jason Harmon, Aqua Marketing Group, Inc., and Todd Deming, Defendants.
No. CV 96-5426(ADS).
United States District Court, E.D. New York.
September 15, 1998.
*188 The Federal Trade Commission, Washington, DC, for Plaintiff F.T.C.; Gary L. Ivens, Joanna P. Crane, of counsel.
Lewis & Trattner, Washington, DC, for Defendants Aqua Marketing Group, Todd Deming; Warren L. Lewis, of counsel
Kaufmann, Feiner, Yamin, Gildin & Robbins, LLP, New York City, for Defendants Aqua Marketing Group, Todd Deming; Daniel Gildin, of counsel.
Justice, Carmen & Kleiman, New York City, for Defendants Dennis Harmon, Jason Harmon, Philip T. Bukowsky, M.B.C., Inc., P.M.C.S.; Ira Kleiman, of counsel.
Lichtenstein & Schindel, Mamaroneck, NY, for Defendant Jay Lerner; Donald Schindel, of counsel.
Salomon, Green & Ostrow, New York City, for Receiver; Chester Salomon, of counsel.

MEMORANDUM OF DECISION AND ORDER
SPATT, District Judge.
This case arises from the individual and corporate defendants' business of marketing and selling a business opportunity, which consisted of processing and submitting claims on behalf of doctors and dentists to insurance companies for payment. The plaintiff Federal Trade Commission (the "FTC" or the "Commission") initiated this action in November 1996 pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 53(b) and 57b, seeking consumer redress, restitution, disgorgement, contract rescission and injunctive relief for the defendants' alleged unfair and deceptive acts or practices, in violation of Section 59(a) of the FTCA, 15 U.S.C. § 45(a), and for alleged violations of the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures" (the "Franchise Rule"), 16 C.F.R. § 436.1.
The FTC contends that the defendants lied to prospective purchasers about material aspects of the business opportunity, including: the amount of money that prospects could earn through the business opportunity; the amount of ongoing assistance the defendants would provide; and the number of medical and dental offices interested in purchasing the services. In addition, the Commission contends that the defendants did not comply with the Franchise Rule by: (1) failing to disclose documents with twenty categories of information material to a prospect's decision with regard to the purchase of a franchise or business opportunity, 16 C.F.R. § 436.1(a); and (2) failing to provide prospects with written substantiation of earnings claims, 16 C.F.R. § 436.1(b)(3), (c)(3) and (e)(3).
This matter is before the Court on the FTC's motion for summary judgment against all the defendants: P.M.C.S., Inc. ("PMCS"); Dennis Harmon ("D. Harmon"); Philip T. Bukowsky ("Bukowsky"); Jay Lerner ("Lerner"); M.B.C., Inc. ("MBC"); Jason *189 Harmon ("J. Harmon"); Aqua Marketing Group, Inc. ("Aqua"); and Todd Deming ("Deming"). The Court observes that Aqua and Deming are the only defendants who submitted papers in opposition to summary judgment. The remaining defendants have not responded to the Commission's motion. The Court also notes that Aqua and Deming were the only defendants who submitted an Answer to the Amended Complaint, which the FTC filed on March 7, 1997. In fact, the docket reflects that none of the defendants, except for Aqua and Deming, have communicated with the Court since January 1997, over a year and a half ago. Two of the defendants, D. Harmon and Lerner, refused to answer any questions during their deposition, and, according to the FTC, "recently pled guilty to felony mail fraud in connection with the marketing of the PMCS business opportunity." In the Court's view, with the exception of defendants Aqua and Deming, the defendants have declined to defend themselves in this litigation, and the Court would be justified in finding them in default. At the very least, their failure to participate in this litigation and oppose the FTC's motion may be viewed as constituting a concession that summary judgment is appropriate as against them. Accordingly, the Court grants the FTC's motion for summary judgment with respect to the defendants PMCS, D. Harmon, Bukowsky, Lerner, MBC, and J. Harmon.
The remainder of this opinion addresses the FTC's motion for summary judgment against the two defendants who oppose it, namely, Deming and Aqua.

I. BACKGROUND
Except where indicated otherwise, the following facts are undisputed.
The defendant PMCS is a Delaware corporation with a principal place of business in Great Neck, New York, located in the District where this Court sits. The defendant D. Harmon is an officer and sole shareholder, Lerner is a silent partner and Bukowski is an officer of PMCS. The defendant MBC is a Delaware Corporation with a principal place of business in Bayside, New York, also located in the Eastern District of New York. J. Harmon is the sole corporate officer of MBC. The PMCS and MBC businesses were virtually identical and indistinguishable: both were in the business of selling and promoting computerized medical billing business ventures, and the companies used the same forms, operated in the same space, intermingled their files, and had an overlapping sales force.
Beginning approximately in 1994, PMCS and MBC sold business opportunity packages to consumers for a fee ranging between $5,995 and $7,495. According to the FTC, the packages principally included medical billing computer software which may be purchased at a retail cost of approximately $69. The packages were advertised as including the following: a two-day training session on how to use the software; marketing tips; a "qualified lead" list of interested doctors and dentists in the consumer's area to whom the consumer should attempt to market the billing services; and follow-up support from PMCS or MBC regarding marketing, sales tips, software-related questions and business development. The advertising and promotional material boasted that purchasers could use a "home computer to earn $23,000 a year working only 28 minutes a day," that they could "make $23,000 a year processing insurance claims for one doctor" and could earn between $50,000 and $250,000 or more per year using the program.
On May 22, 1996, the defendant Aqua  a Nevada corporation with a principal place of business in Hilton Head South Carolina  entered into a written contract with PMCS under which Aqua agreed to serve as the exclusive provider of marketing services for PMCS and the business opportunities it sold (the "PMCS Agreement"). The defendant Deming is Aqua's president and sole shareholder. Pursuant to the PMCS Agreement, from May 22, 1996 until November 1996, when the FTC initiated this action, Aqua hired and trained independent sales representatives to sell the PMCS opportunity, and distributed advertising and promotional materials. Under the agreement, PMCS retained "full control and approval of all promotional material given to prospective licensees."
*190 On November 5, 1996, the Commission initiated this cause of action against the original defendants  PMCS, D. Harmon and Bukowsky  and simultaneously filed an ex parte motion for a temporary restraining order ("TRO"), an asset freeze, and the appointment of a temporary receiver for the corporate defendant PMCS. This Court granted the motion and entered a TRO on November 6, 1996 and appointed Chester Salomon, Esq., as the temporary receiver. Approximately three weeks later, on November 26, 1996, the original defendants agreed to a stipulated preliminary injunction, which the Court "So Ordered." The remaining defendants, Lerner, J. Harmon, MBC, Deming and Aqua, were added to the complaint on February 5, 1997.
The Commission now moves for summary judgment, in support of which it submits evidence, including: (1) PMCS' promotional materials and advertisements; (2) declarations from customers who purchased the business opportunities; (3) customer complaints; and (4) a survey of 29, randomly-selected purchasers of the PMCS business opportunity prepared at the FTC's request by Dr. Thomas Maronick, who holds a doctorate in Business Administration.
The FTC argues that its evidence indicates the defendants misled consumers in several key respects about the business opportunities sold. First, the FTC contends that the defendants misrepresented to customers the amount of earnings they could anticipate. The advertising and promotional material claimed that a purchaser could "earn $23,000 a year working only 28 minutes a day," could "make $23,000 a year processing insurance claims for one doctor" and could earn between $50,000 and $250,000 or more each year using the PMCS program. However, according to Dr. Maronick's survey, 80% of all purchasers of the PMCS business opportunity signed no clients and made no money from the PMCS program.
Second, the FTC contends that the defendants misrepresented the demand for electronic medical billing services, by providing fewer "qualified leads" than they had been promised, and the leads were useless, in any event.
Third, the FTC proffers evidence that the defendants misrepresented that they would provide purchasers with support in the operation of their business. According to the FTC, customers were told they would receive "state of the art" computer software, training, technical support and marketing tips, but in reality, the software frequently malfunctioned, training was inadequate, and ongoing support was virtually non-existent.

II. DISCUSSION

A. The FTC Act and the Franchise Rule: The Standards

The FTC alleges that Aqua and Deming violated § 5 of the FTCA (15 U.S.C. § 45) and the FTC Franchise Rule (16 C.F.R. § 436.1), and are jointly and severally liable with the other defendants for $4,034,874 in consumer redress.

i. Section 5 of the FTCA

Section 5 of the FTCA, 15 U.S.C. § 45(a)(1), provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." To establish that an act or practice is deceptive, the FTC must establish that: (1) a reasonably prudent person would rely on the deceptive advertisements, practices or representations; (2) the advertisements, practices or representations were widely disseminated; and (3) consumers purchased the product. See FTC v. Atlantex Assocs., 1987-2 Trade Cas. (CCH) P 67,788 at 59,252, 1987 WL 20384 (S.D.Fla.1987), aff'd, 872 F.2d 966 (11th Cir.1989); FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir.1988); Southwest Sunsites, Inc. v. FTC, 785 F.2d 1431, 1435 (9th Cir.), cert. denied, 479 U.S. 828, 107 S.Ct. 109, 93 L.Ed.2d 58 (1986); Thompson Medical Co., Inc. v. FTC, 104 F.T.C. 648 (1984), aff'd, 791 F.2d 189 (D.C.Cir.1986), cert. denied, 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); FTC v. Patriot Alcohol Testers, Inc., 798 F.Supp. 851, 855 (D.Mass.1992); F.T.C. v. Kitco of Nevada, Inc., 612 F.Supp. 1282, 1293 (D.Minn.1985). The omission of material information, even if an advertisement does not contain falsehoods, may violate section 5. See *191 Sterling Drug, Inc. v. FTC, 741 F.2d 1146, 1154 (9th Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 143 (1985); Katharine Gibbs School (Inc.) v. FTC, 612 F.2d 658, 665 (2d Cir.1979).
Individual liability pursuant to Section 5 of the FTCA for the acts of a corporation can be based upon either an individual: (1) having directly participated in the violative actions; (2) having played a part in controlling, directing or formulating the policies and practices of the company which violate Section 5; or (3) having the authority to control the actions of other individuals combined with the actual or constructive knowledge that those individuals were committing misrepresentations. See In re National Credit Management Group. L.L.C., 21 F.Supp. 424, 460 (D.N.J.1998).

ii. The Franchise Rule

The FTC is broadly empowered to promulgate regulations prohibiting specific acts which it finds to be unfair or deceptive trade practices. 15 U.S.C. § 57a(a). Pursuant to this statutory authority, the FTC promulgated, in 1978, what is commonly referred to as the "Franchise Rule," 16 C.F.R. Part 436.1. The Franchise Rule requires franchisors to provide a prospective franchisee with a detailed disclosure statement, prior to selling a franchise. The disclosure statement must present certain pertinent facts about the franchisor's corporate history, its financial condition, the track record of other franchisees, and the background of its principal officers. See U.S. v. Building Inspector of America, Inc., 894 F.Supp. 507, 510 (D.Mass. 1995).
To prove a violation of the Franchise Rule, the FTC must show that the defendant's sales are subject to the rule, that the defendant violated the rule and that the violation was made knowingly. United States v. Technical Communications Industries, Inc., et al., 1986-2 Trade Cases P 67,388 at p. 62,060, 1986 WL 15489 (December 22, 1986). The defendants' sales are subject to the Franchise Rule if: (1) the franchisee grants or promises the right to distribute goods or services which bear the franchisor's trademark, trade name, advertising or other commercial symbol, 16 C.F.R. § 436.2(a)(1)(i)(A)(1); (2) the franchisor exerts or has the right to exert significant control over the franchisee's method of operation or the franchisor promises to provide the franchisee significant assistance in the franchisee's operation, 16 C.F.R. § 436.2(a)(1)(i)(B)(1)-(2); and (3) as a condition to obtain or begin the franchise relationship, the franchisee must pay or commits to pay at least $500 to the franchisor or the franchisor's affiliate at any time before or within six months after the franchise business begins, 16 C.F.R. § 436.2(a)(2) and (3)(iii).

B. Summary Judgment: the Standard

Summary judgment is appropriate only where there are no genuine disputes concerning any material facts, and the moving party is entitled to judgment as a matter of law. In Re Blackwood Associates, L.P., 153 F.3d 61, 67 (2d Cir.1998)(citing Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); and Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc., 150 F.3d 132, 136-37 (2d Cir.1998)(citing Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 26 (2d Cir.1988)). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. Holt v. KMI-Continental, Inc., 95 F.3d 123, 128 (2d Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir.1991). The trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." B.F. Goodrich v. Betkoski, 99 F.3d 505, 522 (2d Cir.1996) (quoting Gallo v. *192 Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir.1994)).
Applying these standards to this case, the Court finds the presence of material issues of triable fact which preclude summary judgment against the defendants Aqua and Deming. Deming and Aqua dispute the extent to which they participated in the alleged FTCA and Franchise Rule violations, the extent of consumer injury caused by any violations, whether they had actual or implied knowledge that PMCS's activities were improper, and the extent to which defendant Deming actually controlled or had the authority to control Aqua.
In addition, the defendants dispute the proportion of consumer redress they are liable for, if any. Deming and Aqua emphasize that the FTC seeks consumer redress for the total revenues generated from April 18, 1993, when PMCS was formed, to November 5, 1996, when the Court granted the TRO against the original defendants. However, Aqua and Deming contend that they did not become involved with PMCS until May 22, 1996, and, accordingly, were only involved for less than six months. They also emphasize that all of the consumer declarations, and 23 of the 24 consumer complaints submitted by the FTC relate to the pre-May 22, 1996 activities of PMCS, in which Deming and Aqua took no part. They further underscore that only one of the consumer complaints relates to Aqua, and none relates to Deming individually.
Aqua and Deming further dispute the FTC's theory that the business opportunities it sold were a total fraud and essentially worthless. These defendants assert that the software, training and other services provided to the customers were sufficient to permit them to enter electronic medical billing business, that there is a market for such services, and that there were customers who operated such businesses. Deming, for instance, claims that he operates an electronic billing service in South Carolina which has had up to 10 clients and has made up to $12,000 a month providing services of the type offered through PMCS.
For the foregoing reasons, the Court finds that material issues of fact permeate this dispute, precluding summary judgment in favor of the FTC. Accordingly, the Commission's motion as to the defendants Aqua and Deming is denied in all respects.

III. CONCLUSION
For the reasons stated above, it is hereby
ORDERED, that the plaintiff FTC's motion for summary judgment with respect to the defendants PMCS, D. Harmon, Bukowsky, Lerner, MBC, and J. Harmon is granted with respect to the issue of liability, and the issue of remedies, including consumer redress, restitution, disgorgement, contract rescission and permanent injunctive relief, is to be determined at trial; and it is further
ORDERED, that the plaintiff FTC's motion for summary judgment with respect to the defendants Deming and Aqua is denied in all respects; and it is further
ORDERED, that all the parties are directed to appear before the Court for a status conference on October 14, 1998 at 9:00 a.m., at which time they will be placed on the Court's 24-hour, ready-reserve trial calendar.